IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

BEVERLY ENTERPRISES, INC.,      *
GOLDEN GATE NATIONAL SENIOR     *
CARE, LLC, GGNSC HOLDINGS,      *
LLC, GGNSC CLINICAL SERVICES,   *
LLC, GGNSC ADMINISTRATIVE       *
SERVICES, LLC, AND GGNSC        *
AUGUSTA WINDERMERE, LLC D/B/A   *
GOLDEN LIVING CENTER -          *
WINDERMERE,                     *
                                *
     Plaintiffs,                *
                                *
     v.                         *      CV 114-069
                                *
JUDY CYR, as Administrator      *
of the Estate of Frankie        *
Campbell, and in her            *
Representative Capacity         *
on Behalf of the Children       *
of Frankie Campbell,            *
                                *
     Defendant.                 *

---

**O R D E R**

---

     Before the Court is Defendant's motion to dismiss
Plaintiffs' complaint to compel arbitration. (Doc. no. 7.) For
the reasons set forth herein, the motion is **DENIED** and
Defendant is **DIRECTED** to arbitrate her claims.


## I. INTRODUCTION

     This is a dispute about an arbitration agreement between
a nursing facility in Augusta, Georgia, and one of its

residents. After the death of the resident, and the commencement of a tort action by one of the decedent's daughters in state court, the Facility and several other related entities filed a complaint in this Court to compel arbitration.

## A. Factual Background

On April 26, 2008, Ms. Frankie Campbell ("Campbell") designated Ms. Judy Cyr ("Cyr"), her daughter, as her attorney in fact pursuant to a general power of attorney. (Compl., Ex. A.) On June 30, 2008, Campbell was admitted to Golden LivingCenter - Windermere ("the Facility"), a skilled nursing facility in Augusta, Georgia, operated by Plaintiff GGNSC Augusta Windermere, LLC d/b/a Golden LivingCenter - Windermere. (Compl. ¶ 14.)

Upon Campbell's admission to the Facility on June 30, 2008, Cyr signed an arbitration agreement as Campbell's authorized representative pursuant to the power of attorney. (Compl., Exs. A, B.) The arbitration agreement provides in pertinent part:

> [A]ny and all claims, disputes, and controversies . . . arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration . . . in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement. . . .

Id. The reference in this paragraph to the National

Arbitration Forum Code of Procedure ("N.A.F. Code") is the only reference in the arbitration agreement to the National Arbitration Forum ("N.A.F.") or its Code of Procedure. This is also the only place in the agreement where the topic of an arbitration forum is mentioned. The N.A.F. Code, which is incorporated into the agreement, provides that

> [t]his Code shall be administered only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum.

(Def.'s Mot. to Dis. at 5.) In other words, the agreement incorporates the N.A.F. Code by reference, and the N.A.F. Code selects the N.A.F. as the forum for arbitration. However, the N.A.F. no longer administers consumer arbitrations. (Pls.' Br. in Supp. of Compl. at 13-16; Def.'s Mot. to Dis. at 5-10.)

With regard to who must arbitrate their claims, the agreement

> shall inure to the benefit of and bind the parties, their successors, and assigns, including without limitation . . . all persons whose claim is derived through or on behalf of the Resident, including any parent, spouse, sibling, child . . . .

(Compl., Ex. B.)

The arbitration agreement has a signature line for the resident and a signature line for an "authorized representative" in the event that the resident is unable to consent or sign. (<u>Id.</u>) Cyr's signature appears on both lines. (<u>Id.</u>) The document prompts the authorized representative, if

3

there is one, to describe his/her "Relationship to Resident." (Id.) Next to that prompt appears the handwritten letters "POA." (Id.) It seems reasonable to infer that "POA" stands for "power of attorney" because the parties agree that Cyr signed the agreement on Campbell's behalf pursuant to a power of attorney.

Campbell resided at the Facility from June 30, 2008 until her death on February 2, 2012. (Def.'s Mot. to Dis. at 1.) During her residency, Cyr asserts that Campbell sustained injuries including pressure sores, weight loss, contractures, falls, infections, and ultimately death. (Id.) On August 7, 2012, Cyr was appointed administrator of Campbell's estate. (Compl. ¶ 19; Ex. C.)

**B. Procedural History**

1. The State Court Action

On January 13, 2014, Cyr filed a complaint in Wayne County Superior Court, Georgia, against the Facility, several other related entities, and Ms. Angie Denison ("Denison") alleging negligence in the care and treatment of Campbell. (Compl., Ex. C.) Cyr alleged that Denison was the administrator of the Facility during Campbell's residency. (Id.) Cyr brought the action as administrator of Campbell's estate and in her representative capacity on behalf of Campbell's children. (Id.)

4

The defendants in the state court action asserted in part as a defense that Cyr had filed that complaint in violation of an arbitration agreement. However, Cyr states that the defendants did not file a motion to compel arbitration nor did they attempt to enforce the arbitration agreement in the context of the state court proceedings. (Def.'s Mot. to Dis. at 2.) Denison filed a motion to dismiss asserting that she was not, and never had been, the administrator of the Facility. (Id.) The state court action is still pending.

2. The Complaint in this Court to Compel Arbitration

On March 21, 2014, the defendants in the state court action, minus Denison, ("Plaintiffs") filed a complaint in this Court against Cyr ("Defendant") to compel arbitration based on diversity jurisdiction. (Compl. ¶ 8.) Defendant is a resident of the state of Georgia while Plaintiffs are incorporated and have their principal places of business in other states. (Id. ¶¶ 1-7.) Denison, like Defendant, is a Georgia resident and is not joined as a Plaintiff in this diversity suit to compel arbitration. (Pls.' Reply Br. in Supp. of Compl. at 8; Denison Affidavit.)

On June 6, 2014, Defendant filed a motion to dismiss arguing that the arbitration agreement is unenforceable because the N.A.F. is unavailable as a forum, that Defendant's wrongful death claims are not subject to arbitration, and that

Denison - or the correct administrator - is an indispensable, non-diverse party. Defendant also argues that the Court should abstain from exercising jurisdiction in light of the parallel state court action and that discovery is needed.

## II. DISCUSSION

### A. Standard for Motions to Dismiss

In considering a motion to dismiss, courts must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). Courts, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

6

## B. The Federal Arbitration Act ("F.A.A.")

The arbitration agreement provides that it "shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. §§ 1-16." (Compl., Ex. B.) The Federal Arbitration Act ("F.A.A.") allows a suit to compel arbitration "under a written agreement for arbitration." 9 U.S.C. § 4. A district court must compel arbitration if there is a valid agreement to do so. <u>Chastain v. Robinson-Humphrey Co.</u>, 957 F.2d 851, 854 (11th Cir. 1992)(citing 9 U.S.C. §§ 2 & 3.) In the face of an agreement to arbitrate, the party resisting arbitration must identify enough evidence in the record to make its denial of a valid agreement colorable. <u>Id.</u> at 855. "Federal policy requires [courts] to construe arbitration clauses generously, resolving all doubts in favor of arbitration." <u>Becker v. Davis</u>, 491 F.3d 1292, 1305 (11th Cir. 2007), <u>abrogated on other grounds by</u> <u>Arthur Anderson LLP v. Carlisle</u>, 556 U.S. 624 (2009); <u>see</u> <u>Picard v. Credit Solutions, Inc.</u>, 564 F.3d 1249, 1253 (11th Cir. 2009)("The F.A.A. creates a strong federal policy in favor of arbitration.").

"The F.A.A. reflects the fundamental principle that arbitration is a matter of contract" and "places arbitration agreements on an equal footing with other contracts." <u>Rent-A-Center, W., Inc. v. Jackson</u>, 561 U.S. 63, 67 (2010). Thus, in construing arbitration agreements, courts apply state-law

principles relating to contract formation, interpretation and enforceability. See Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005)("In determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts.") However, district courts may apply only state law governing "contracts generally and not arbitration agreements specifically." Jenkins v. First Am. Cash Advance of Georgia, LLC, 400 F.3d 868, 875 (11th Cir. 2005)(quoting Bess v. Check Express, 294 F.3d 1298, 1306 (11th Cir. 2002)).

C. The Unavailability of the National Arbitration Forum

Defendant argues that no valid arbitration agreement exists because an integral part of the agreement - the chosen forum for arbitration - is no longer available. Plaintiffs respond that the reference to the N.A.F. in the agreement may be severed because it is not integral, and the remainder of the agreement should be enforced.

If a forum selection clause is integral to an arbitration agreement, and the forum is unavailable, then arbitration cannot be compelled. Inetianbor v. CashCall, Inc., 768 F.3d 1346, 1350 (11th Cir. 2014) (citing Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000)). The failure of the chosen forum precludes arbitration whenever the choice of

forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern. Brown, 211 F.3d at 1222 (holding that choice of forum was not integral where the arbitration agreement incorporates the N.A.F. Code by reference, and the N.A.F. Code selects the N.A.F. as the forum for arbitration). To decide whether the forum selection clause is integral, courts consider how important the term was to one or both of the parties at the time they entered into the agreement. Inetianbor, 768 F.3d at 1350 (citing Brown and holding that choice of forum was integral where there were multiple references throughout the text of the arbitration agreement to the forum's procedural rules and the chosen forum for arbitration).

The arbitration agreement here is similar to the one in Brown in that the text of both agreements select the N.A.F. Code but do not explicitly select the N.A.F. as the arbitral forum. The agreement incorporates the N.A.F. Code by reference, and the N.A.F. Code selects the N.A.F. as the forum. Under Brown, structuring an agreement in such fashion is insufficient evidence that the choice of the N.A.F. as the forum was an integral part of the agreement rather than an ancillary logistical concern. This is not a case, like Inetianbor, where there are several explicit references in the text of the agreement regarding the chosen forum for arbitration. Here, the forum is not once mentioned in the text

of the agreement.

Defendant relies on two recent decisions of the Georgia Court of Appeals to support her argument that the selection of the N.A.F. as the forum was important and therefore the N.A.F.'s unavailability precludes arbitration in this case. See Miller v. GGNSC Atlanta, 746 S.E.2d 680, 686 (Ga. App. 2013)(unavailability of the N.A.F. as arbitral forum rendered agreement impossible to enforce); see also Sunbridge Ret. Care Associates, LLC v. Smith, 757 S.E.2d 157 (Ga. App. 2014)(availability of the N.A.F. as an arbitral forum was integral to arbitration agreement; therefore, the unavailability of the N.A.F. and the N.A.F. Code rendered arbitration agreement impossible to enforce).

There seems to be a conflict between the law announced in the state courts in Miller and Smith and the holdings of the United States Court of Appeals for the Eleventh Circuit in Brown and clarified in Inetianbor on whether the unavailability of the N.A.F. renders an agreement like the one here unenforceable. Miller and Smith would strike this agreement in its entirety and allow Defendant to proceed with her lawsuits. Brown and Inetianbor would only strike the forum selection clause and would direct Defendant to arbitrate her claims through a substitute arbitrator.

The F.A.A. "allows state law to invalidate an arbitration

10

agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically." <u>Dale v. Comcast Corp.</u>, 498 F.3d 1216, 1219 (11th Cir. 2007). The law in <u>Miller</u> and <u>Smith</u> is specifically related to arbitration, not just contracts in general. Under the F.A.A., that law cannot invalidate this arbitration agreement. More importantly, this case falls squarely under <u>Brown</u>. Thus, the Court holds that the unavailability of the N.A.F. does not destroy this arbitration agreement; it merely renders the forum selection clause unenforceable.

**D. Severance of the Forum Selection Clause and Substitution of an Alternate Arbitrator**

Plaintiffs argue that the Court should sever the forum selection clause, enforce the arbitration agreement as though the N.A.F. is not referenced in any manner, and designate a substitute arbitrator pursuant to Section 5 of the F.A.A.

As for the severance issue, the agreement contains a severance clause, which states that

> [i]n the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall remain effective.

(Compl., Ex. B.) Pursuant to this provision, the Court hereby **SEVERS** the unenforceable forum selection clause from the arbitration agreement - due to the unavailability of the N.A.F. - and finds that the remainder of the agreement is

11

effective.

As for naming a substitute arbitrator, the F.A.A. gives guidance for such circumstances. It states that

> [I]f for any [] reason there shall be a lapse in the naming of an arbitrator . . ., or in filling a vacancy, then upon application of either party to the controversy the court shall designate and appoint an arbitrator . . . .

9 U.S.C. § 5. Here, Plaintiffs ask the Court to name a substitute arbitrator. The Court **DIRECTS** the parties to jointly designate and appoint a substitute arbitrator, and inform the Court of the appointment, within fourteen days of this Order. Pursuant to Section 5 of the F.A.A., the Court "shall designate and appoint an arbitrator" if the parties prove unable to do so. See 9 U.S.C. § 5.

### E. Defendant's Wrongful Death Claims

Defendant signed the arbitration agreement as Campbell's "authorized representative" pursuant to a power of attorney. As Defendant correctly notes, nowhere does the arbitration agreement indicate that Defendant signed the document in any individual capacity, nor does it indicate that she had any authority to sign on behalf of Campbell's other children. Defendant argues that, by not signing, she and her siblings did not consent to arbitrate their wrongful death claims.

Consent to arbitrate is an essential component of an enforceable arbitration agreement. Hogsett v. Parkwood Nursing

& Rehab. Ctr., Inc., 997 F. Supp. 2d 1318, 1328 (N.D. Ga 2014)(citing Ashburn Health Care Ctr., Inc. v. Poole, 648 S.E.2d 430, 431 (Ga. App. 2007)). However, the fact that Defendant did not sign the arbitration agreement in her individual capacity and the fact that her siblings did not sign the agreement in any capacity prove to be of little import here for two reasons.

First, the language of the arbitration agreement itself clearly binds the resident's children without requiring the children's consent or signature.

> [The arbitration agreement] shall inure to the benefit of and bind the parties, their successors and assigns, including without limitation . . . all persons whose claim is derived through or on behalf of the Resident, including any parent, spouse, sibling, child . . . .

(Compl., Ex. B.) As a matter of contract interpretation, the Court finds that Campbell, through her authorized representative, obligated her children to submit their derived wrongful death claims to arbitration.

Second, if an arbitration agreement is enforceable as to a decedent and the decedent's estate, then it is also enforceable as to any individual wrongful death claims brought by the decedent's survivors, regardless of whether any of those survivors signed the arbitration agreement. Hogsett, 997 F. Supp. 2d at 1328 ("As a wrongful death claim is a derivative claim that takes on all defenses available against

13

the decedent, if the decedent was unable to prevail in a tort claim based on the conduct that led to her death, then her survivors would likewise be estopped."); Thi of Georgia at Shamrock, LLC v. Fields, 2013 WL 6097569, *3 (S.D.Ga. Nov. 18, 2013)("[T]he Georgia wrongful death statute essentially places a beneficiary in the same shoes as the decedent; thus, a beneficiary is bound by the decedent's promise to arbitrate."); Wade v. Watson, 527 F. Supp. 1049, 1052 (N.D.Ga. 1981)("Although it is true that the action created by the wrongful death statute is different from the cause of action which [the decedent] would have possessed had he lived, any defense which would have been good against [the decedent] is good against his representatives in a wrongful death action. Since the original statute of 1850 [the Supreme Court of Georgia] has consistently held that no recovery could be had unless the deceased in his lifetime could have maintained an action for damages for the injury to him, and that any defenses good as against the deceased would be good as against the action brought by the beneficiaries."). Accordingly, to the extent that the arbitration agreement is valid and enforceable, the wrongful death claims of Campbell's children are subject to arbitration.

## F. Indispensable Parties

Defendant argues that the complaint must be dismissed

14

pursuant to Federal Rule of Civil Procedure 19 because Plaintiffs manufactured diversity jurisdiction by failing to join a non-diverse indispensable party, namely the administrator of the Facility. Rule 19 states a two-part test for determining whether a party is indispensable. <u>Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1279 (11th Cir. 2003). First, the Court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. <u>Id.</u> "If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction), then the Court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." <u>Id.</u>

In the state court action, Defendant named Denison as the administrator. Denison then informed that court that she is not, and never has been, the administrator. Defendant "seeks to discover the correct administrator" and argues that "Ms. Denison is a Georgia resident, as would any other appropriate administrator(s), most likely, and their joinder would destroy diversity jurisdiction." (Def.'s Mot. to Dis. at 19.) Joinder of the administrator would only destroy diversity jurisdiction if the administrator is in fact a non-diverse party. Defendant cannot state with any degree of certainty whether that is the case. Apparently, Defendant does not know who the

administrator was during her mother's stay at the Facility or in which state he/she resides. The Court declines the invitation to dismiss a complaint or even take up a Rule 19 analysis based on the "most likely" residence of a yet to be identified person.

## G. Abstention

Defendant asks this Court to abstain from exercising jurisdiction in this case in light of the parallel state court action. Where there are parallel federal and state proceedings, federal courts consider six factors in determining whether abstention is appropriate:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

Jackson-Platts v. General Elec. Capital Corp., 727 F.3d 1127, 1141 (11th Cir. 2013)(citing Colorado River Water Cons. Dist. v. United States, 424 U.S. 800, 818-20 (1976)). No single factor is dispositive, and federal courts are required to weigh the factors with a heavy bias favoring the exercise of federal jurisdiction. Id.; First Franklin Fin. Corp. v. McCollum, 144 F.3d 1362, 1364 (11th Cir. 1998) (per curiam) ("[D]ismissal is warranted in light of a concurrent state

16

court action only when a balancing of relevant factors, heavily weighted in favor of the exercise of jurisdiction, shows the case to be exceptional." (internal quotation marks omitted)).

Here, the parties agree that the <u>Colorado River</u> factors should be applied to resolve the abstention issue, but disagree whether those factors weigh in favor of abstention. The first factor asks if one court assumed jurisdiction over property before the other court. <u>Jackson-Platts</u>, 727 F.3d at 1141. Where there is no real property at issue, this factor does not favor abstention. <u>Id.</u> The parties here agree that this factor weighs against abstention because there is no real property before the state court.

The second factor concerns the inconvenience of the federal forum and focuses primarily on the physical proximity of the federal forum to the evidence and witnesses. <u>Id.</u> Under this factor, Defendant argues that she did not anticipate federal litigation, but she does not argue that the federal forum is geographically inconvenient. As Plaintiffs observe, the federal forum is located in Augusta, Georgia, where Defendant resides, where the Facility is located and where the arbitration agreement at issue was executed. The second factor weighs against abstention because the federal forum is not inconvenient.

Under the third factor, the Court asks which forum acquired jurisdiction first. Id. at 1142. "What matters is not so much the chronological order in which the parties initiated the concurrent proceedings, but the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier." Id. In January 2014, Defendant filed the state court action. Two months later, Plaintiffs sought relief in this Court. Although the state court action is still pending, very little has transpired there since Plaintiffs filed their complaint here. Therefore, this factor does not weigh in favor of abstention. See McCollum, 144 F.3d at 1365 (this factor weighs against dismissal when no activity has occurred in state proceeding before the filing of the federal petition); see also Jackson-Platts, 727 F.3d at 1142 (noting that this factor does not counsel in favor of dismissal when state court action is no further along than the federal case).

The fourth factor addresses the potential for piecemeal litigation. Defendant contends that piecemeal litigation is a danger here and therefore the Court should not exercise jurisdiction. Contrary to Defendant's assertion, this factor has "no force" in a case like this. See McCollum, 144 F.3d at 1364. This matter is before the Court due to a complaint to compel arbitration and therefore no protracted federal litigation would result from the Court's exercise of

jurisdiction over the instant complaint. See id. ("The federal
proceeding has only two possible outcomes: an order compelling
arbitration, or an order refusing to compel arbitration and
dismissing the petition. No piecemeal litigation of the merits
can occur either way, and even if arbitration results, that is
piecemeal litigation that the parties and federal policy have
together made mandatory."). Therefore, the fourth factor
weighs against abstention.

The parties agree that the fifth factor, the law to be
applied, weighs against abstention because this action was
brought pursuant to the Federal Arbitration Act. The sixth and
final factor concerns whether the state court can adequately
protect the parties' rights. Jackson-Platts, 727 F.3d at 1143.
Plaintiffs could seek relief in state court by filing a motion
to compel arbitration there. But the mere fact that Plaintiffs
could obtain relief from the state court does not justify
refusing to exercise jurisdiction here. See id (agreeing with
the general observation regarding the adequacy of the state
forum, but concluding that the fact that both fora are
adequate to protect the parties' rights merely renders this
factor neutral); see also Ambrosia Coal & Constr. Co. v. Pages
Morales, 368 F.3d 1320, 1334(11th Cir. 2004)("This factor will
only weigh in favor or against abstention when one of the fora
is inadequate to protect a party's rights."). Here, this
factor does not favor abstention because it appears that both

19

fora are adequate.

On balance, the <u>Colorado River</u> factors clearly do not weigh in favor of abstention in this case.

## H. The Need for Discovery

Defendant argues that, if all of her other arguments fail, that she be entitled to conduct discovery prior to the Court issuing a final order for the limited purpose of determining the validity of the arbitration agreement. Section 4 of the Federal Arbitration Act calls for "an expeditious and summary hearing, with only restricted inquiry into factual issues." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 23 (1983). Here, Defendant states that discovery is needed, but does not point to facts that place the making of the agreement in issue (<u>e.g.</u>, blank signature line, evidence of fraud or coercion). Defendant briefly mentions that depositions would be taken, but does not identify who would be deposed or what information she hopes to discover from them. Therefore, the Court finds that granting Defendant's request for discovery prior to the Court's issuance of a final order in this case would simply frustrate the "statutory policy of rapid and unobstructed enforcement of arbitration agreements." <u>Id.</u>

## III. CONCLUSION

Upon the foregoing, Defendant's motion to dismiss (doc.

no. 7) is hereby **DENIED**. Defendant is **ORDERED** to submit to arbitration her currently pending claims against Plaintiffs in the State Court of Wayne County.

**IT IS FURTHER ORDERED** that the parties shall jointly designate and appoint a substitute arbitrator, and inform the Court of that appointment, within **fourteen (14)** days of the date of this Order. If the parties fail to do so, the Court shall appoint a substitute arbitrator.

The Clerk is directed to **CLOSE** this case. Either party may move to reopen the case if it becomes necessary.

**ORDER ENTERED** at Augusta, Georgia, this _29th_ day of _January_, 20_15_.

Honorable J. Randal Hall
United States District Judge
Southern District of Georgia

21